UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

JERRY JEMAR WORTHY,

          Plaintiff,

v.

HEIDI E. WASHINGTON et al.,

          Defendants.
_____/

Case No. 1:23-cv-574

Honorable Paul L. Maloney

## **OPINION**

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. Under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim against Defendants Washington, Unknown Party #1, and Barnes. The Court will also dismiss, for failure to state a claim, Plaintiff's Eighth Amendment claims against Defendants Burt and Stewart relating to the conditions of confinement in the gymnasium. Plaintiff's Eighth Amendment claims against Defendants Burt, Stewart, and King relating to the risk of COVID-19 infection remain in the case.

**Discussion**

I.      **Factual Allegations**

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Thumb Correctional Facility (TCF) Lapeer, Lapeer County, Michigan. The events about which he complains, however, occurred at the Muskegon Correctional Facility (MCF) in Muskegon, Muskegon County, Michigan. Plaintiff sues the following MDOC personnel based in Lansing: Director Heidi E. Washington and MDOC Correctional Facilities Administrator Deputy Director Unknown, referenced herein as Unknown Party #1. Plaintiff also sues the following MCF personnel: Warden Sherri L. Burt, Assistant Deputy Warden D. Stewart, Captain Unknown King, and Grievance Coordinator L. Barnes, collectively referenced herein as the "MCF Defendants." Plaintiff sues each Defendant in his or her respective personal capacity.

Plaintiff alleges that each Defendant played some role in failing to protect him from the risk of COVID-19 infection from July 24, 2020, to August 7, 2020, when Plaintiff tested positive for the virus. Additionally, Plaintiff contends that, once Plaintiff tested positive, the MCF Defendants moved him into a gymnasium with more than one hundred other infected prisoners. Plaintiff contends that the conditions in the gymnasium were so awful and unsafe that they rise to the level of cruel and unusual punishment.

Plaintiff notes that the MCF Defendants generally failed to follow the protective measures put in place by Defendant Washington in MDOC Director's Office Memorandum 2020-30R3 ("DOM"). Plaintiff attaches a copy of the DOM to his complaint.[1] (ECF No.5-1.)

---

[1] The Court may consider documents that are attached to a *pro se* complaint when considering whether the complaint states a claim upon which relief should be granted. *See, e.g.*, *Powell v. Messary*, 11 F. App'x 389, 390 (6th Cir. 2001) (affirming the Eastern District of Michigan District Court's consideration of the attachments to plaintiff's complaint to determine that the plaintiff had received medical treatment and, therefore, failed to state a claim under the Eighth Amendment); *Hardy v. Sizer*, No. 16-1979, 2018 WL 3244002 (6th Cir. May 23, 2018) (affirming this Court's

2

The crux of Plaintiff's complaint is that Defendants were responsible for commingling prisoners who presented different levels of risk of infection and, thus, could not be safely housed together. Plaintiff notes that the very first case of COVID-19 was identified on July 24, 2020, or July 27, 2020. (Compl., ECF No. 5, PageID.94.) Up until that point, routine testing had determined that all prisoners tested negative for the virus. (*Id.*, PageID.94, 96.) Plaintiff claims that, by the next day, Defendants started moving inmates from the COVID-positive inmate's unit—unit 2—into Plaintiff's unit—unit 4. The moved inmates included "COVID-19 POSITIVE" inmates and persons who had close contact with COVID-19 positive inmates. (*Id.*, PageID.93.)

Plaintiff seeks a declaration of his legal rights as well as compensatory and punitive damages exceeding $2,000,000.00.

## II.     Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Id.*; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the

---

consideration of the plaintiff's complaint allegations and the documents attached to the complaint to support the determination that the plaintiff failed to state a claim); *Hogan v. Lucas*, No. 20-4260, 2022 WL 2118213, at *3 n.2 (6th Cir. May 20, 2022) (stating that "[b]ecause the documents attached to Hogan's complaint are referenced in the complaint and 'central to the claims contained therein,' they were properly considered at the § 1915(e)(2) screening stage." (citations omitted)).

defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(ii)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

Plaintiff alleges that Defendants have violated the Eighth Amendment prohibition against cruel and unusual punishment in two ways. First, Plaintiff alleges that Defendants Washington, Unknown Party #1, Burt, Stewart, King, and Barnes were deliberately indifferent to his risk of COVID-19 infection. Second, he alleges that Defendants Burt, Stewart and Barnes were deliberately indifferent to his health and safety because of the dangerous and unsanitary conditions in the gymnasium.

### A. Defendant Washington and Defendant Barnes

Plaintiff alleges that on July 25, 2020, he sent a kite or other form of correspondence to Defendant Washington advising her that by virtue of the intermingling of COVID-19 positive and

4

close contact inmates with inmates who tested negative, the MCF Defendants were not following the applicable DOM. (Compl., ECF No. 5, PageID.93.) Plaintiff reports that at some point in time, Defendant Stewart told Plaintiff that the MDOC Directors Office advised that MCF was properly "administering" the COVID-19 positive or close contact inmates. (*Id*.) Plaintiff accuses Defendant Washington of being "grossly negligent in supervising subordinates who committed wrongful acts . . . ." (*Id*.)

Plaintiff's allegations against Defendant Barnes, the MCF Grievance Coordinator, are also scant: "MCF's . . . Grievance Coordinator L. Barnes . . . after being informed of the violations through institution report and proper exhaustion of administrative remedies . . . [f]ailed to remedy the wrong doing, and endangerment of my life and others." (Compl., ECF No. 5, PageID.97.)

Plaintiff fails to allege that either Defendant Washington or Defendant Barnes took any action against him, other than to suggest that they failed to correct the wrongful conduct of others. Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior or vicarious liability. *Iqbal*, 556 U.S. at 676; *Monell v. New York City Dep't of Soc. Servs*., 436 U.S. 658, 691(1978); *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009). A claimed constitutional violation must be based upon active unconstitutional behavior. *Grinter v. Knight*, 532 F.3d 567, 575–76 (6th Cir. 2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002). The acts of one's subordinates are not enough, nor can supervisory liability be based upon the mere failure to act. *Grinter*, 532 F.3d at 576; *Greene*, 310 F.3d at 899; *Summers v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004). Moreover, § 1983 liability may not be imposed simply because a supervisor denied an administrative grievance or failed to act based upon information contained in a grievance. *See Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999). "[A] plaintiff must plead

5

that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676.

The United States Court of Appeals for the Sixth Circuit repeatedly has summarized the minimum required to constitute active conduct by a supervisory official:

> "[A] supervisory official's failure to supervise, control or train the offending individual is not actionable *unless* the supervisor either encouraged the specific incident of misconduct or in some other way directly participated in it." *Shehee*, 199 F.3d at 300 (emphasis added) (internal quotation marks omitted). We have interpreted this standard to mean that "at a minimum," the plaintiff must show that the defendant "at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending officers."

*Peatross v. City of Memphis*, 818 F.3d 233, 242 (6th Cir. 2016) (quoting *Shehee*, 199 F.3d at 300, and citing *Phillips v. Roane Cnty.*, 534 F.3d 531, 543 (6th Cir. 2008)); *see also Copeland v. Machulis*, 57 F.3d 476, 481 (6th Cir. 1995) (citing *Rizzo v. Goode*, 423 U.S. 362, 375–76 (1976), and *Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 1984)); *Walton v. City of Southfield*, 995 F.2d 1331, 1340 (6th Cir. 1993); *Leach v. Shelby Cnty. Sheriff*, 891 F.2d 1241, 1246 (6th Cir. 1989).

Plaintiff fails to allege any facts showing that Defendant Washington or Defendant Barnes encouraged or condoned the conduct of any subordinates, or authorized, approved or knowingly acquiesced in the conduct of others. Indeed, Plaintiff fails to allege any facts at all about the conduct of Defendant Washington or Defendant Barnes. Plaintiff's vague and conclusory allegations of supervisory-type responsibility are insufficient to demonstrate that Defendants Washington or Barnes were personally involved in the events relating to Plaintiff's exposure to the risk of COVID-19 infection. Conclusory allegations of unconstitutional conduct without specific factual allegations fail to state a claim under § 1983. *See Iqbal*, 556 U.S. at 678–79; *Twombly*, 550 U.S. at 555. Because Plaintiff's § 1983 action is premised on nothing more than some form of vicarious liability, his allegations relating to Defendant Washington and Defendant Barnes fail to state a claim.

6

### B. Deliberate Indifference to the Risk of COVID-19 Infection

In *Trapp v. Huss*, No. 21-2958, 2022 WL 18145300 (6th Cir. May 5, 2022), the Sixth Circuit reviewed the dismissal of an Eighth Amendment claim similar to the claim Plaintiff raises herein. The *Trapp* panel explained:

> A deliberate-indifference claim under the Eighth Amendment includes both an objective and a subjective prong: (1) the inmate "is incarcerated under conditions posing a substantial risk of serious harm" (the objective prong), and (2) "the official knows of and disregards an excessive risk to inmate health or safety" (the subjective prong). *Farmer v. Brennan*, 511 U.S. 825, 834, 837 (1994). In *Wilson v. Williams*, 961 F.3d 829 (6th Cir. 2020), we stated that "the objective prong is easily satisfied" in this context, *id*. at 840. "The COVID-19 virus creates a substantial risk of serious harm leading to pneumonia, respiratory failure, or death." *Id*.
>
> The subjective prong, on the other hand, generally requires alleging at least that the defendant "acted or failed to act despite his knowledge of a substantial risk of serious harm." *Id*. (quoting *Farmer*, 511 U.S. at 842). The official must have a "state of mind more blameworthy than negligence," *Farmer*, 511 U.S. at 835. The key inquiry is whether the defendants "responded reasonably to the risk posed by COVID-19." *Wilson*, 961 F.3d at 840-41. And a response may be reasonable even if "the harm imposed by COVID-19 on inmates . . . 'ultimately [is] not averted.'" *Id*. at 841 (quoting *Farmer*, 511 U.S. at 844).

*Trapp*, 2022 WL 18145300, at *2.

The Court concludes that Plaintiff has adequately alleged the objective prong of a COVID-19 deliberate indifference claim. He alleges that he is medically vulnerable, (Compl., ECF No. 5, PageID.96). *Wilson v. Williams*, 961 F.3d 829, 840 (6th Cir. 2020) (noting that the potential harms to medically-vulnerable inmates highlight the seriousness of the risk). And his allegations regarding the rapidly increasing number of infected inmates during the few weeks covered by his complaint evidence a level of transmissibility that further highlights the substantiality of the risk. *Id*.

#### 1. Defendants Burt, Stewart, and King

The subjective prong requires an analysis of the "state of mind" of each of the Defendants. With regard to Defendants Burt, Stewart, and King, Plaintiff alleges as follows:

7

> On . . . 7/31/2020 . . . Defendant -Burt began MOVING COVID-19 POSITIVE inmates, or potentially COVID-19 positive inmates WITHOUT WAITING FOR THEIR TEST RESULTS, including moving those inmates into housing . . . Unit-4 . . . . (Compl., ECF No. 5, PageID.94; *see also* PageID.98, 100.)
>
> Defendant . . . Burt . . . and . . . Stewart . . . refused to test staff for the virus. (*Id*.)
>
> Defendant[s] . . . Burt and Stewart . . . allowed known COVID-19 CLOSE CONTACTS to generously intermingle and continue working institutional positions throughout the prison facility. (*Id.*, PageID.95.)
>
> Chow Hall seating arrangements also exhibited deliberate indifference . . . w[h]ere Defendant[s] . . . Burt, Stewart, and King . . . DID NOT follow DOM 2020-30R3, Pg. #2[, i]n accordance with CDC recommended social distancing recommendations stated to be followed at all times. (*Id.*; *see also id.*, PageID.98.)
>
> On . . . 7/24/2020 & 7/28/2020 . . . Defendant[s] . . . Burt . . . [and] Stewart . . . with sure KNOWLEDGE of the SERIOUS RISK that existed at [MCF] . . . an[d] after . . . 2 entire months . . . from the issuance of DOM 2020-30R3 . . . FAILED to establish and determine where IS[]OLATION AREAS were to be located IN ADVANCE . . . . (*Id.*; *see also id.*, PageID.98.)

The Court concludes that Plaintiff has alleged facts that may show the MCF Defendants were aware of risks[2] and then disregarded those risks by way of their actions or failures to act in response to the COVID-19 pandemic. Accordingly, Plaintiff's Eighth Amendment claim against the MCF Defendants (other than the claim against Barnes which is addressed above*)* regarding deliberate indifference to the risks of COVID-19 infection will not be dismissed on initial review.

### 2. Defendant Unknown Party #1

Plaintiff alleges that the DOM required the CFA Deputy Director—Unknown Party #1—to determine where isolation areas were located. (Compl., ECF No. 5, PageID.93.) Plaintiff states

---

[2] Plaintiff, like other inmates, is not particularly careful in his use of terms like "COVID-19 positive" or "COVID-19 close contacts." A particular prisoner may turn out to be COVID-19 positive or a COVID-19 close contact even though, in the moment, no person was in a position to know that fact. This is certainly not the first COVID-19 suit filed against the MCF Defendants based on these alleged facts. The alleged facts are not typically borne out by affidavits when motions for summary judgment are at issue. At this time, however, the Court must accept Plaintiff's allegations as true even though it is unlikely that Plaintiff could have personal knowledge of the facts he alleges.

8

that as of July 24, 2020, and July 28, 2020, Defendant Unknown Party #1 failed to identify, in advance, where isolation areas were to be located. (*Id*., PageID.95, 98.) Plaintiff does not allege that Unknown Party #1 failed to identify isolation areas when they were needed,[3] nor does Plaintiff allege that Unknown Party #1's failure to identify isolation areas *in advance* had any impact on Plaintiff.[4] Moreover, Plaintiff makes no allegations with regard to Defendant Unknown Party #1's state of mind. For all of these reasons, Plaintiff has failed to state an Eighth Amendment claim regarding the risk of COVID-19 infections against Defendant Unknown Party #1.

    **C.    Deliberate Indifference to the Dangerous Conditions in the Gymnasium**

Plaintiff presents a similar claim with regard to the conditions of confinement in the gymnasium for the COVID-19-infected prisoners. Plaintiff describes those conditions as follows:

> . . . [U]nder continued directors administrative instructions of Warden S. L. Burt, and ADW, D. Stewart. I, Plaintiff-Worthy #415988, was removed and placed within the overpopulated facility gymnasium, exceeding one hundred inmates having tested positive for COVID-19 with various physical/mental health related symptoms and se[]verities. Presented with serious unquestioned deprivations of basic human needs and of the minimal civilized measure of life's necessities. Death for some as a result!
>
> I . . . [e]ndured serious physical and emotional injuries, and also unhealthy, unsanitary, dangerous, offensive conditions. These deprivations consisted of: Reasonable safety, where recommended social distancing was impossible due to inmate overcrowding without required supervision. Here, inmates were allowed to roam throughout the gymnasium and school building (day and night). Committing unaccounted acts of violence and sexual assaults, fashioning weapons from a surplus of materials found within the building.

---

[3] Indeed, the fact that inmates who tested positive for the COVID-19 virus were isolated in the gymnasium suggests that Unknown Party #1 identified that necessary isolation area.

[4] As stated in note 1, *supra*, the Court may consider documents that are attached to a pro se complaint when considering whether the complaint states a claim upon which relief should be granted. But, "[w]hen a document attached to the complaint contradicts the allegations, the document trumps the allegations . . . [if the] document . . . 'utterly discredit[s]' the allegations." *In re Flint Water Cases*, 960 F.3d 303, 329 (6th Cir. 2020). The DOM attached to the complaint utterly discredits Plaintiff's claim that Unknown Party #1 was required to identify isolation areas ***in advance***. (ECF No. 5-1, PageID.106–107.)

> Also sanitation and personal hygiene facilities were inadequate where (mop closets were used in place of a proper shower, and areas of urination and def[e]cation). Only one working toilet and two functioning urinals were available, for a population exceeding one hundred prisoners with various COVID-19 symptoms, preventing myself . . . and other prisoners to promptly dispose of waste. Further clogged toilets, dirty janitors closets, decrepit bathroom and show facilities, inadequate cleaning supplies.

(Compl., ECF No. 5, PageID.96–97; *see also id.*, PageID.99.)

The Eighth Amendment imposes a constitutional limitation on the power of the states to punish those convicted of crimes. Punishment may not be "barbarous," nor may it contravene society's "evolving standards of decency." *Rhodes v. Chapman*, 452 U.S. 337, 345–46 (1981). The Amendment, therefore, prohibits conduct by prison officials that involves the "unnecessary and wanton infliction of pain." *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987) (per curiam) (quoting *Rhodes*, 452 U.S. at 346). The deprivation alleged must result in the denial of the "minimal civilized measure of life's necessities." *Rhodes*, 452 U.S. at 347; *see also Wilson v. Yaklich*, 148 F.3d 596, 600–01 (6th Cir. 1998). The Eighth Amendment is only concerned with "deprivations of essential food, medical care, or sanitation" or "other conditions intolerable for prison confinement." *Rhodes*, 452 U.S. at 348 (citation omitted). Moreover, "[n]ot every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey*, 832 F.2d at 954. "Routine discomfort is 'part of the penalty that criminal offenders pay for their offenses against society.'" *Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (quoting *Rhodes*, 452 U.S. at 347). As a consequence, "extreme deprivations are required to make out a conditions-of-confinement claim." *Id.*

In order for a prisoner to prevail on an Eighth Amendment claim, he must show that he faced a sufficiently serious risk to his health or safety and that the defendant official acted with "'deliberate indifference' to [his] health or safety." *Mingus v. Butler*, 591 F.3d 474, 479–80 (6th Cir. 2010) (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)) (applying deliberate indifference

10

standard to medical claims); *see also Helling v. McKinney*, 509 U.S. 25, 35 (1993) (applying deliberate indifference standard to conditions of confinement claims). The deliberate-indifference standard includes both objective and subjective components. *Farmer*, 511 U.S. at 834; *Helling*, 509 U.S. at 35–37. To satisfy the objective prong, an inmate must show "that he is incarcerated under conditions posing a substantial risk of serious harm." *Farmer*, 511 U.S. at 834. Under the subjective prong, an official must "know[] of and disregard[] an excessive risk to inmate health or safety." *Id.* at 837. "[I]t is enough that the official acted or failed to act despite his knowledge of a substantial risk of serious harm." *Id.* at 842. "It is, indeed, fair to say that acting or failing to act with deliberate indifference to a substantial risk of serious harm to a prisoner is the equivalent of recklessly disregarding that risk." *Id.* at 836. "[P]rison officials who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted." *Id.* at 844.

The Court will presume, for purposes of this preliminary review, that the described conditions satisfy the objective prong of the test. Plaintiff's allegations fall short, however, with regard to the subjective prong. Plaintiff does not allege facts showing that Defendants Burt or Stewart—the only Defendants other than Defendant Barnes who Plaintiff contends are responsible under this claim—knew of the excessive risks that Plaintiff faced in the gymnasium and then disregarded those risks. Accordingly, Plaintiff has failed to state a claim against any Defendant relating to the conditions of confinement in the gymnasium.

## Conclusion

Having conducted the review required by the PLRA, the Court determines that Defendants Washington, Unknown Party #1 (identified as the Deputy Director Central Facilities Administration), and Barnes will be dismissed for failure to state a claim, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court will also dismiss, for failure to

11

state a claim, Plaintiff's Eighth Amendment claim relating to the conditions in the gymnasium against remaining Defendants Burt and Stewart. Plaintiff's claims against Defendants Burt, Stewart, and King under the Eighth Amendment relating to their deliberate indifference to the risk of COVID-19 infection remain in the case.

An order consistent with this opinion will be entered.


Dated:  September 18, 2024                             /s/ Paul L. Maloney
                                                      Paul L. Maloney
                                                      United States District Judge